Filed 1/19/22  Davis v. Purple Mountain Empire X CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| KEITH O. DAVIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PURPLE MOUNTAIN EMPIRE X, LLC,<br><br>    Defendant and Respondent. | D078450<br><br><br>(Super. Ct. No. 37-2020-00027623-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed in part, reversed in part, and remanded.

Keith O. Davis, in pro. per., for Plaintiff and Appellant.

Fitch Law Firm and Stephen J. Fitch for Defendant and Respondent.

Plaintiff Keith Davis alleges that his former employer Purple Mountain Empire X, LLC (PMEX) and its counsel Stephen Fitch committed fraud on the court to secure the dismissal of his 2012 sexual harassment lawsuit. Davis has asserted variations of this basic claim in multiple lawsuits filed over the years against PMEX, Fitch, and others, resulting in prior rulings adverse to Davis on demurrers and anti-SLAPP motions. Presented with another attempt, the trial court granted PMEX's motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16[1]), concluding Davis's claims against PMEX arose from PMEX's protected petitioning activity and lacked minimal merit given the litigation privilege and res judicata.

Addressing Davis's appeal, we affirm the trial court's sound analysis as to six of nine causes of action in Davis's complaint, which rest on alleged litigation misconduct by PMEX and its counsel in prior court proceedings. We must reverse, however, as to the three employment-related causes of action asserted in Davis's complaint, concluding PMEX did not meet its threshold burden to show that the anti-SLAPP statute applied. Although Davis's attempt to relitigate the same employment claims that have been fully and finally decided against him on the merits may fail for other reasons such as res judicata, those claims are not subject to a special motion to strike.

FACTUAL AND PROCEDURAL BACKGROUND

This is Davis's third time suing PMEX, and his second time alleging that PMEX perpetrated fraud on the court during prior proceedings. As some background is necessary to understand the res judicata issues presented in

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

this appeal, we first explore the underlying litigation before discussing this action and the court's order granting PMEX's anti-SLAPP motion.

A.    *Underlying Litigation*

Davis worked as a property manager for various "Purple Mountain" LLCs owned by Linda Greenberg.  In 2010, Greenberg sued Davis to recover an unpaid debt.[2]  Davis filed a cross-complaint against Greenberg and nine Purple Mountain entities (not including PMEX), alleging that Greenberg sexually harassed him and terminated him when he complained.  (For purposes of this opinion, the 2010 action is referred to as *Davis I*.)  The parties in *Davis I* reached a global settlement in October 2012.  In signing the agreement, Davis released all claims against Greenberg and the nine Purple Mountain entities he sued.

Just a few months later, Davis filed a new lawsuit (*Davis II*[3]) against PMEX, alleging retaliation, sexual harassment, and a hostile work environment based on the same conduct alleged in his *Davis I* cross-complaint.  Judge Hayes sustained PMEX's demurrer without leave to amend in October 2013, concluding the release contained in the 2012 settlement agreement barred Davis's claims against PMEX.  This court affirmed that ruling on appeal, explaining that although PMEX was not a party to the 2012 settlement agreement, it was an intended third party beneficiary, and the release encompassed all of Davis's employment-related claims.  (*Davis v. Purple Mountain Empire X, LLC* (Jan. 8, 2015, D065302) [nonpub. opn.].)

---

[2]    (*Greenberg v. Davis* (Super. Ct. San Diego County, No. 37-2010-00105739-CU-CO-CTL) (*Davis I*).)

[3]    (*Davis v. Purple Mountain Empire X, LLC* (Super. Ct. San Diego County, No. 37-2012-0088440-CU-WT-CTL) (*Davis II*).)

Believing PMEX's attorney Stephen Fitch secured the result in *Davis II* through fraud on the court, Davis filed several additional lawsuits. In 2014, he sued Fitch for defamation, abuse of process, malicious prosecution, fraud, and infliction of emotional distress based on filings Fitch made on PMEX's behalf in *Davis II*.[4] Judge Meyer granted Fitch's anti-SLAPP motion in that action in May 2015, concluding the absolute litigation privilege barred all causes of action except malicious prosecution, which in turn failed because neither the 2010 nor 2012 cases were commenced by Fitch nor were terminated in Davis's favor.

In June 2015, Davis sued Greenberg, Fitch, various Purple Mountain entities (excluding PMEX), accountants, and other professionals involved in the settlement of *Davis I* for fraud, interference with economic advantage, and intentional infliction of emotional distress.[5] Broadly speaking, Davis claimed he would not have signed the settlement agreement had he known that Greenberg would tell the IRS she cancelled $1.2 million in debt (triggering tax consequences for Davis), that the Purple Mountain entities would claim that PMEX was covered by the release, or that the defendants would continue to disparage his character after settling. Judge Pollack sustained defendants' demurrers without leave to amend in March 2016, finding Davis's claims were barred by res judicata, collateral estoppel, and the absolute litigation privilege, and imposed sanctions for Davis's "repeated efforts to relitigate issues either already decided against him or presently on

---

[4] (*Davis v. Fitch* (Super. Ct. San Diego County, No. 37-2014-00036612-CU-DF-CTL).)

[5] (*Davis v. Greenberg, et al.* (Super. Ct. San Diego County, No. 37-2015-00014803-CU-FR-CTL) appeal dism. Mar. 6, 2017, D070261.)

appeal." Davis appealed, but his appeal was dismissed on account of his failure to timely file an opening brief. (Cal. Rules of Court, rule 8.220(a)(1).)

In November 2015, Davis sued PMEX a second time (*Davis III*), alongside Greenberg, Fitch, and Fitch's law firm.[6] Davis charged these defendants with fraud, intentional interference with contractual relations, fraudulent misrepresentation, wrongful termination, and intentional infliction of emotional distress based on their handling of *Davis II*. Judge Wohlfeil granted an anti-SLAPP motion filed by PMEX and Greenberg in February 2017. He reasoned that these defendants met their moving burden to show that Davis's claims arose out of their protected petitioning activity, since each of Davis's claims, including the one labeled wrongful termination, related to statements made in filings during litigation of *Davis II*. The court noted that Davis did not file any opposition to establish the minimal merit of his claims. But even if he had, Judge Wohlfeil reasoned that each of the asserted claims were barred by the absolute litigation privilege (Civ. Code, § 47, subd. (b)). Davis appealed, but his appeal was dismissed when he again failed to timely file an opening brief.

B.    *This Action*

Davis filed this action against PMEX (his third) in August 2020. His complaint pleads nine causes of action. The first three plead verbatim the wrongful termination, sexual harassment, and hostile work environment claims asserted against PMEX in *Davis II*. As he did in *Davis II*, Davis avers that Greenberg sexually harassed him while he worked for her at PMEX, and fired him when he complained.

---

6    (*Davis v. Purple Mountain Empire X, LLC* (Super. Ct. San Diego County, No. 37-2015-00038546-CU-CO-CTL) (*Davis III*), appeal dism. May 30, 2018, D072097.)

The remaining six causes of action rest on alleged litigation misconduct during court proceedings in *Davis II*. Of these, three were previously filed and adjudicated in *Davis III*—fraud, intentional interference with contractual relations, and intentional infliction of emotional distress. Three others were asserted for the first time against PMEX, although perhaps raised against other defendants in different lawsuits—abuse of process, breach of contract, and defamation.

However labeled, each of the litigation misconduct claims rest on the same basic theory asserted in *Davis III*. Because PMEX was not party to the 2012 settlement agreement, Davis asserts that his 2012 sexual harassment complaint against PMEX (*Davis II*) was not barred by the release. He believes PMEX and its counsel Stephen Fitch convinced courts otherwise by fraud. By transferring *Davis II* from Judge Pressman to Judge Hayes, filing declarations indicating the transfer would permit coordination with *Davis I*, representing to Judge Hayes at hearings that the 2012 release was not a nondisclosure agreement, augmenting the record on appeal in *Davis II*, and misrepresenting to this court in the appeal whether the trial court had taken judicial notice of certain materials, Davis asserts that Fitch perpetrated a fraud on both the trial and appellate courts.

C.    *PMEX's Anti-SLAPP Motion*

PMEX filed an anti-SLAPP motion and contemporaneously filed a demurrer on res judicata and other grounds.[7] Arguing that Davis's claims challenged court filings and communications during *Davis II*, PMEX asserted they necessarily arose out of protected petitioning activity. With the burden shifted to Davis to demonstrate the minimal merit of his claims, PMEX

---

[7]    Judge Bacal did not rule on the demurrer, finding it moot given her ruling on the anti-SLAPP motion.

claimed that res judicata and the litigation privilege prevented Davis from carrying that burden. To the extent Davis attempted to plead malicious prosecution, such a claim would moreover fail for lack of a favorable termination. Finally, PMEX argued that each of Davis's claims were time-barred by the applicable statutes of limitations.

In support of its motion, PMEX requested judicial notice of prior pleadings and court rulings in *Davis I*, *Davis II*, *Davis III*, and selected other related litigation described above. Fitch filed a short declaration to support his request for $5,472 in prevailing party attorney's fees (§ 425.16, subd. (c)(1)).

Davis filed an opposition brief but did not submit any supporting evidence or oppose the request for judicial notice. He urged the court to "decide if Attorney Fitch, under penalty of perjury, has been forthcoming to our courts," as "[t]hat is what brings us here today." Addressing PMEX's contention that he was attempting to relitigate claims that three courts had decided against him, Davis maintained that he was "a victim of judicial abuse, induced by [PMEX's] filing of false writings and making untrue statements." Davis emphasized that PMEX was not a third party beneficiary to the 2012 settlement agreement, and courts were misled into believing otherwise by Fitch's filings.

Davis argued PMEX could not show that his claims challenged protected speech or petitioning activity given his contention that he was "a victim of judicial abuse." To the extent the burden shifted to him to show his claims had minimal merit, Davis argued courts have "power to void and reopen Minute Orders if they are obtained by fraud on the court." By "fraud on the court," Davis meant that Fitch allegedly concealed the fact that PMEX was not a party to the 2012 settlement, improperly introduced the 2012

7

settlement into evidence in *Davis II*, and misled the courts to reopen the closed *Davis I* case to dismiss *Davis II*. He claimed Fitch had filed an "altered version of the front page of the [2012] release" to hide that PMEX was not party to the settlement and misrepresented to the trial court that *Davis I* and *Davis II* could be coordinated.

Responding to PMEX's defenses, Davis claimed that res judicata posed no bar because PMEX was not a party to *Davis I* nor in privity with a party so as to be bound by the release. He further claimed that the litigation privilege did not apply given his allegations of attorney fraud. Finally, Davis claimed there was no statute of limitations where he sought to vacate a *void* judgment procured by fraud.

Suggesting that Davis's opposition brief shed "a clearer light on his complaint," PMEX explained in its reply brief that each of the nine causes of action in Davis's complaint arose solely from statements or writings by PMEX or its counsel in prior litigation, i.e., protected petitioning activity under the anti-SLAPP statute. Not only were such claims barred by the absolute litigation privilege (Civ. Code, § 47, subd. (b)) and applicable statutes of limitation, PMEX argued they were further barred by res judicata—Davis previously sued PMEX on the same primary right in *Davis III* and could not relitigate those issues.

The parties appeared before Judge Bacal in October 2020. Davis restated his objections to Fitch's handling of *Davis II*. He also relied on a notation by the superior court clerk in the register of actions for *Davis II* to suggest that Judge Hayes's demurrer ruling was not final. The court explained that the 2012 demurrer ruling was indeed final and issued an order granting PMEX's anti-SLAPP motion. Judge Bacal reasoned that all of plaintiff's causes of action rested on the premise that PMEX (through its

8

counsel) filed false and perjurious statements in superior court and the court of appeal during *Davis II*. Accordingly, PMEX met its moving burden to show that Davis's claims arose out of its protected activity.

That finding shifted the burden to Davis to establish the minimal merit of his claims. The court concluded Davis could not establish a probability of prevailing on any of his causes of action. The litigation privilege barred all tort claims based on court filings, even if fraudulent or false, that bore some relation to a lawsuit. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965 (*Kenne*).) To the extent Davis sought to assert nontort claims, the court found these to be barred by res judicata. (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corporation* (2013) 214 Cal.App.4th 1520, 1527.) Granting PMEX's unopposed request for judicial notice, the court noted that Davis "already raised claims alleging improper and perjured pleadings and statements, and these claims have already been adjudicated."

Upon making its ruling, the court reached PMEX's request for attorney's fees (§ 425.16, subd. (c)(1)). Noting Davis did not challenge the fees requested and finding them substantiated by Fitch's declaration, the court awarded PMEX $5,472.

## DISCUSSION

Davis appeals the anti-SLAPP ruling, asserting once more that PMEX perpetrated fraud on the court in securing an adverse judgment in *Davis II*. Davis plainly believes he has been denied his day in court. Notwithstanding Judge Hayes's demurrer ruling in *Davis II* and this court's affirmance on appeal, he does not believe the settlement and release he signed in 2012 bars his employment-related claims against *PMEX*. Beyond that, he is at a loss to understand *why* his repeated efforts to sue PMEX, Fitch, or countless others have failed.

9

Simply put, an action predicated on an opponent's prior court filings is bound to invite anti-SLAPP scrutiny. (§ 425.16, subd. (e)(1) & (2).) That those filings are alleged to be false, fraudulent, or perjured does not change this inquiry or limit application of the litigation privilege to bar virtually all derivative tort liability. (Civ. Code, § 47, subd. (b).) Even more fatally here, res judicata does not allow Davis to repeatedly relitigate a claim that has already been finally decided against him. In *Davis II* he had his day in court to argue that the 2012 release did not cover PMEX, but he lost. He likewise had his day in court to argue that PMEX perpetrated fraud on the court in securing that result, but he lost that argument as well in *Davis III*. Although Davis might feel these decisions were wrongly decided or perhaps even induced by fraud, they are now final and preclude his attempts to relitigate.

This broad analysis leads us to affirm Judge Bacal's order granting PMEX's anti-SLAPP motion as to the litigation misconduct claims asserted in counts 4 through 9 of Davis's complaint. We reach a different conclusion, however, as to the employment-related claims asserted in counts 1 through 3 of Davis's complaint. These claims, unlike the rest, do not challenge litigation communications made by PMEX or its counsel during *Davis II*. Although they will almost certainly face a demurrer on res judicata grounds, PMEX did not meet its threshold burden to show that these three causes of action are subject to a special motion to strike.

A. *Anti-SLAPP Framework*

Codified at section 425.16, the anti-SLAPP statute offers a summary-judgment-like procedure at the outset of a case to protect defendants from meritless lawsuits that might chill them from exercising their constitutional rights to speech and petition. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) A defendant filing an anti-SLAPP motion

bears the initial burden of showing that the plaintiff's claims arise from the defendant's protected speech or petitioning activity. (*Id.* at p. 884; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) Once a defendant meets its moving burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits as to each challenged claim. (*Wilson,* at p. 884.) Without resolving evidentiary conflicts, the court at this second stage assesses "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Baral,* at p. 396.) If it would not suffice, the court strikes the challenged causes of action. (*Ibid.*; *Wilson,* at p. 884; § 425.16, subd. (b)(1).)

A defendant prevailing on an anti-SLAPP motion is generally entitled to recover attorney's fees and costs, including fees incurred in connection with a successful appeal. (§ 425.16, subd. (c)(1); *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 421 (*Contreras*).) We review the grant or denial of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

B.     *Prong One:  Protected Activity*

PMEX must "make two related showings" to meet its moving burden. (*Wilson, supra,* 7 Cal.5th at p. 887.) First, it must show that the conduct by which Davis claims injury falls within one of the four statutorily protected categories of activity described in section 425.16, subdivision (e). Next, it must show that Davis's claims *arise out of* that protected conduct. (*Wilson,* at p. 887; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.)

11

Davis's complaint includes three "employment-related claims" against PMEX, for wrongful discharge, sexual harassment, and hostile work environment. It also asserts six "litigation misconduct claims" based on alleged in-court communications by PMEX and its attorney, Stephen Fitch, during *Davis II*. The litigation misconduct claims are for abuse of process, breach of the 2012 settlement agreement, intentional interference with contractual relations, fraud, intentional infliction of emotional distress, and defamation. We address these sets of claims separately.

1. *Employment Claims*

The first through third causes of action in Davis's complaint allege wrongful discharge, sexual harassment, and hostile work environment. These claims, repeated from *Davis II*, rest on the theory that Greenberg sexually harassed Davis at PMEX and fired him when he complained. On their face, they target the employment relationship itself and do not arise out of protected petitioning activity. Davis seeks money damages from PMEX based on *Greenberg's* (not Fitch's or PMEX's) allegedly wrongful acts.

In fairness to PMEX and the trial court, Davis's nearly 100-page complaint—replete with scanned excerpts from different court proceedings, missing pages, nonsequential paragraph numbering, and unconventional headings—presents a difficult read. In pleading the first through third counts, the complaint inserts scanned pages from the *Davis II* complaint under a heading labeled, "OVERVIEW OF THE CASE." These three causes of action are then followed by 28 pages of procedural history describing what transpired in *Davis II*. Included in this discussion is an allegation that Davis's "lengthy complaint is based on all the fraudulent activity" by Fitch and PMEX in litigating *Davis II*. After recounting this history, the complaint returns to plead abuse of process and the remaining five litigation

12

misconduct counts.  At first glance, it is confusing whether Davis recites the procedural history from *Davis II* to challenge alleged litigation misconduct or instead merely to suggest that absent such misconduct, he would have prevailed on his wrongful discharge, sexual harassment, and hostile work environment causes of action brought in *Davis II*.

But for the abuse of process claim being labeled as the "Fourth Cause of Action" and subsequent counts labeled in succession thereafter—or Davis's statement in his opposition brief below that his complaint asserts "nine cause[s] of action"—it would be unclear whether Davis meant to reassert the employment-related claims in this case.[8]  Ultimately, however, in reviewing the allegations as they are framed, we cannot reasonably conclude that the *basis* for the employment related causes of action asserted in counts 1 through 3 is alleged litigation misconduct by Fitch and PMEX.[9]

In a similar vein, an argument could be made that Davis's opposition brief, by focusing almost exclusively on litigation-related misconduct by PMEX and Fitch during *Davis II*, reframes the employment-related claims. In evaluating the first prong of the anti-SLAPP analysis, "the court is not

---

[8]    Repeat litigation of similar claims only adds to the confusion.  Judge Wohlfeil ruled in 2017 that a wrongful termination claim asserted in *Davis III* rested on alleged litigation misconduct in *Davis II*, whereas an identically labeled claim against the same defendant here appears to rest on conduct allegedly occurring during the parties' employment relationship.

[9]    We considered the possibility that Davis seeks to argue that alleged attorney misconduct during *Davis II* overcomes a res judicata bar to relitigating his employment-related claims.  For example, Davis appears to suggest elsewhere in his complaint that fraud on the court rendered the rulings in *Davis II* void.  But any argument that Fitch's in-court conduct overcomes a res judicata *defense* would be better reserved for a demurrer opposition.  Its superfluous inclusion in the complaint—if that is what it is— does not change the liability-forming *basis* for counts 1 through 3.

limited to examining the allegations of the complaint alone but rather considers the pleadings and the factual material submitted in connection with the special motion to strike," and a plaintiff's opposition brief is properly considered to the extent it clarifies allegations in a complaint. (*Contreras, supra,* 5 Cal.App.5th at pp. 408, 413.) For example, Davis explained in his opposition that "[t]he first three Causes of Action are tied to the Davis v. PMEX, LLC Complaint [in *Davis II*] that Davis would have prevailed on those three Causes of Action had Attorney Fitch on behalf of PMEX, LLC not interfered with DAVIS' Complaint [through unlawful litigation conduct in *Davis II*]." He later suggested he would have prevailed on those three causes of action had Fitch not introduced the settlement agreement to argue PMEX was covered by the release.

Perhaps crediting these assertions, PMEX suggested that Davis's opposition "shed[ ] a clearer light on his complaint" and demonstrated that all asserted claims rested on the same alleged attorney misconduct in *Davis II.* Implicitly accepting this view, the trial court grouped all nine causes of action together to find PMEX's moving burden met.

But isolated references in a disorganized opposition brief hardly "clarify" the employment causes of action pleaded in Davis's complaint. Courts may not rewrite the complaint to conclude that the conduct underlying a plaintiff's causes of action is protected activity. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 621 (*Medical Marijuana*); *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217–219; see also *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936 [anti-SLAPP movant may not redefine the factual basis for a plaintiff's claims in arguing they arise from protected conduct].) Thus, we conclude the trial court erred in striking the three employment-

related causes of action because PMEX did not show that these claims arose out of protected speech or petitioning activity. (See *Medical Marijuana*, at pp. 621–622; *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 705.)

Although PMEX is not entitled to strike the employment-related claims, "[it] may have other remedies available." (*Medical Marijuana, supra,* 6 Cal.App.5th at p. 621.) In moving to strike, PMEX filed a contemporaneous demurrer asserting that each of Davis's claims was barred by res judicata. It argued in its supporting briefs that final judgments in *Davis II* and *Davis III* "bar relitigation of these issues in the current action." (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) While Judge Bacal did not rule on the demurrer, deeming it moot in light of her anti-SLAPP ruling, PMEX should be permitted to request a ruling on remand.[10]

2. *Litigation Misconduct Claims*

Setting aside the first three causes of action, the rest of Davis's complaint is directed at alleged litigation misconduct by PMEX and its counsel during *Davis II.* Specifically, Davis asserts that PMEX made false statements and filed fraudulent, inadmissible, and perjured documents to convince the trial and appellate courts to incorrectly deem his employment-related claims barred by the 2012 release.

For instance, in pleading abuse of process, Davis references a series of allegedly wrongful actions taken by PMEX and Fitch during *Davis II*, such as filing a settlement agreement from a "closed case," improperly requesting judicial notice, coordinating *Davis I* and *Davis II* before Judge Hayes, failing

---

[10] Because the res judicata issue was fully briefed and considered at the joint demurrer and anti-SLAPP hearing, all that remains on remand is for the court to issue an order deciding whether to sustain PMEX's demurrer on res judicata grounds as to counts 1 through 3.

to disclose certain documents to the court, citing unpublished authority, submitting perjurious declarations, and making inaccurate representations in court. That same conduct, labeled as "fraud on the court," underlies Davis's fraud and intentional infliction of emotional distress claims. The breach of contract and intentional interference with contractual relations counts seek enforcement of the 2012 settlement on its terms, based on a theory that PMEX perpetrated fraud in claiming to be covered by the release. Finally, the defamation claim alleges that PMEX, through Fitch, "repeatedly filed defamatory comments untruthful of Davis['s] character" during *Davis II* proceedings.

The anti-SLAPP statute protects "any written or oral statement or writing made before a . . . judicial proceeding," or "made in connection with an issue under consideration or review" by a judicial body. (§ 425.16, subd. (e)(1) & (2).) Because each of the litigation-misconduct claims rest entirely on filings and statements made in court proceedings, PMEX met its moving burden to show that these causes of action arise out of conduct in furtherance of its rights to petition the courts. (See *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 (*Cabral*) ["all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute"]; *Kenne, supra,* 230 Cal.App.4th at p. 965 [" 'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute' "].)[11]

_____

11    On reply, Davis cites *Park, supra,* 2 Cal.5th 1057 for the proposition that protected communications might *trigger* a plaintiff's lawsuit without forming the basis for it. (See, e.g., *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732 [attorney's in-court filings were merely incidental to plaintiff's

16

Davis's suggestion that PMEX's communications in *Davis II* were false or unlawful does not change the result. (See *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521 [filing a lawsuit was protected petitioning activity even though defendant maintained the alleged claims were fabricated]; *Cabral, supra,* 177 Cal.App.4th at pp. 480−482 [litigation activity that assertedly violated child support evasion statutes was nonetheless protected]; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 612−616 [court filing that violated court rules was protected activity].) As the trial court correctly found, PMEX met its moving burden to show that Davis's litigation misconduct claims challenge protected activity.

In short, PMEX met its moving burden to establish that the litigation-misconduct claims, but not the employment claims, arise from its protected petitioning activity. We therefore proceed to the next step solely as to the litigation-misconduct claims asserted in counts 4 through 9 of the complaint, evaluating whether Davis met his burden to prove their minimal merit.

C.    *Prong Two:  Probability of Prevailing*

Because PMEX met its moving burden as to the litigation-misconduct claims, Davis must show a probability of prevailing on those claims to survive a motion to strike. (§ 425.16, subd. (b).) To do so, he must establish that each of the litigation misconduct claims asserted in counts 4 through 9 is legally sufficient and prima facie factually supported. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88−89.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or

conflict of interest claims].) But from a careful parsing of Davis's complaint, his opposition brief to the anti-SLAPP motion, and his opening and reply briefs on appeal, it is clear that the "petitioning activity *itself* is the wrong complained of." (*Park*, at p. 1060.)

17

petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89.)

Substantive defenses are relevant at this second stage of the anti-SLAPP analysis, presenting a hurdle a plaintiff must clear to demonstrate a probability of prevailing on the challenged claims. (*Dzibula v. Piazza* (2020) 59 Cal.App.5th 140, 154.) "[A] plaintiff must show that any asserted defenses are inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 288 (*Weeden*).) The trial court focused on two defenses—the litigation privilege (Civ. Code, § 47, subd. (b)) and res judicata. Addressing these concepts in reverse order, we agree with the trial court they entirely defeat Davis's litigation-misconduct claims.

1. *Res Judicata*

Res judicata, or claim preclusion, "acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) It applies where a second suit "involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*Ibid.*) Of critical importance here, two lawsuits involve the same cause of action for res judicata purposes if they are based on the same "primary right"—i.e., "the plaintiff's right to be free from the particular injury suffered." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) A primary right is distinguishable from the *legal theories* a plaintiff asserts—one injury gives rise to only one claim for relief even if it might support recovery under multiple legal theories. (*Id.* at pp. 681−682.) Thus, where a plaintiff asserts a single primary right, "an adverse judgment in the first suit is a bar even though the second suit is based on a different theory." (*Id.* at p. 682.) Likewise, a single primary right

18

gives rise to a single cause of action for res judicata purposes even if it may entitle a plaintiff to different *remedies*. (*Ibid.*)[12]

The doctrine of res judicata provides that "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.) A plaintiff may not split a single cause of action or relitigate the same cause of action on a different theory or for different relief. (*Ibid.*) Application of res judicata promotes judicial economy: "A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' " (*Ibid.*) For that reason, " '[r]es judicata bars "not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit." ' " (*Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259, 264.)

Although Davis's complaint asserts six litigation-misconduct claims, all six derive from a single primary right: the right to be free from false and perjurious filings and statements that allegedly led the courts to rule in PMEX's favor in *Davis II*. Derived from a unitary primary right, counts 4 through 9 describe a single cause of action according to different legal theories. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)

---

12    A "cause of action" for res judicata purposes is distinct from the same phrase as used in the anti-SLAPP statute, which considers the viability of claims for relief that are pleaded in a plaintiff's complaint. (See *Baral, supra,* 1 Cal.5th at pp. 381–382.) "[D]espite the imprecision that may result from the various connotations of the term 'cause of action,' its meaning is generally evident in context." (*Id.* at p. 382, fn. 2.)

Davis litigated the identical primary right to completion in *Davis III*. Judge Wohlfeil granted PMEX's anti-SLAPP motion in *Davis III*, concluding all of Davis's asserted claims in that case challenged protected petitioning activity and lacked minimal merit given the litigation privilege (Civ. Code, § 47, subd. (b)). Davis's appeal was dismissed when he failed to timely file an opening brief. When remittitur issued, the judgment subsequently entered against him became final. (See, e.g., *Stolz v. Bank of America* (1993) 15 Cal.App.4th 217, 222, fn. 6.)[13]

"Public policy and the interest of litigants alike require that there be an end to litigation." (*Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 637.) It is immaterial that there is not complete overlap between the legal theories asserted in *Davis III* and here; what matters is that the theories raised here were within the *scope* of the prior action such that they *could have been raised* in *Davis III*. (See *Panos*, at p. 638.) " ' " "The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions.' " ' " (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576.) Because this action rests on the same primary right as *Davis III*, a case between the same parties that reached a final judgment on the merits adverse to Davis, res judicata bars all further

---

13  Our record includes Judge Wohlfeil's order granting the anti-SLAPP motion but omits the subsequent entry of judgment in *Davis III* and remittitur upon dismissal of Davis's appeal. On our own motion, we take judicial notice of these court filings, having notified the parties before oral argument of our intent to do so. (See Evid. Code, §§ 452, subd. (d)(1), 459, subds. (a) & (c); see also *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 45 [judicial notice of appellate record in related case]; *Conservatorship of J.Y.* (2020) 49 Cal.App.5th 220, 225, fn. 2 [judicial notice of trial court records "after affording the parties the opportunity to comment at oral argument"].)

litigation of claims based on alleged litigation misconduct by PMEX or its counsel during *Davis II*.

Davis offers no persuasive argument to the contrary on appeal. He asserts, as he did below, that PMEX was not a party to the 2010 action so as to bar claims against it in *Davis II*. The question, however, is not whether *Davis I* precluded Davis from bringing *Davis II*, but rather whether *Davis III* precludes Davis from bringing the current lawsuit. Because principles of res judicata based on the adverse judgment in *Davis III* preclude Davis from relitigating his litigation misconduct claims, the court properly granted PMEX's motion to strike counts 4 through 9.

2. *Litigation Privilege*

The trial court additionally concluded that Davis's claims were barred by the litigation privilege, and PMEX urges this as an alternative ground to affirm. We agree with PMEX that the litigation privilege bars all of Davis's litigation misconduct claims.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment*, at p. 1241.)

21

The main purpose of the litigation privilege is to afford litigants and witnesses the "utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg, supra,* 50 Cal.3d at p. 213; see *Weeden, supra,* 70 Cal.App.5th at pp. 288–289 [privilege protects court access by shielding defendants from derivative tort liability].) Where it applies, the privilege is absolute, providing a defense to all torts except malicious prosecution and applying "to all publications, irrespective of their maliciousness." (*Silberg,* at pp. 212, 215−216.) " 'Any doubt about whether the privilege applies is resolved in favor of applying it.' " (*Finton Construction, Inc. v. Binna & Keys, APLC* (2015) 238 Cal.App.4th 200, 212 (*Finton*).)

However labeled, counts 4 through 9 in Davis's complaint allege that PMEX engaged in litigation misconduct during *Davis II* by filing false statements and perjured documents and making misrepresentations in open court. Davis believes that PMEX secured an adverse judgment in *Davis II* through fraud on the court. Five of the six counts allege tort liability on this basis: Davis sues PMEX for abuse of process, intentional interference with contractual relations, fraud, defamation, and intentional infliction of emotional distress. The litigation privilege extends to each of these claims. (See *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132 ["The policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, fraud, and to the torts alleged here: interference with contract and prospective economic advantage."].)

22

Although the litigation privilege generally does not extend to breach of contract claims (*Weeden, supra,* 70 Cal.App.5th at pp. 288–289), Davis's claim labeled as a breach of contract in count 5 of his complaint actually sounds in tort *as pleaded*. Relying on his reading of the 2012 settlement, Davis does not seek to enforce any obligations that PMEX allegedly failed to fulfill. Instead he asserts that Judge Hayes erroneously found PMEX covered by the release based on PMEX's fraudulent filings. He questions whether the 2012 release was "unlawfully introduced into Evidence" and considered by the trial and appellate courts and concludes the court sided with PMEX on its demurrer based on "fraud upon the Court." As "it is the gravamen of the cause of action rather than its designation that is controlling" (*McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1162), what Davis characterizes as a "breach of contract" cause of action is not, and accordingly, also falls within the scope of the litigation privilege. Moreover, the litigation privilege has been applied to contract-based claims resting on the same communicative conduct underlying a plaintiff's tort claims where, as here, doing so furthers the policy objectives underlying the litigation privilege. (*Feldman v. 1100 Park Lane Assocs.* (2008) 160 Cal.App.4th 1467, 1497−1498.)[14]

14    The litigation privilege bars claims seeking to impose *tort liability for damages*, not claims seeking equitable relief to declare a prior judgment void. (*Weeden, supra,* 70 Cal.App.5th at pp. 288–289.) By delineating his claims for abuse of process, fraud, defamation, etc., we understand Davis to allege tort liability for damages. For example, he seeks money damages for fraud, including $5 million in punitive damages, and asserts he lost "millions due [to] him" through PMEX's interference with his contractual relations. Elsewhere in his complaint and briefs, however, Davis suggests he seeks to set aside a void judgment on the basis of extrinsic fraud. To the extent he

Since the litigation privilege *may* reach the claims asserted in counts 4 through 9, the question then becomes whether the privilege covers the *conduct* underlying those claims. That analysis is straightforward: Davis challenges communications made during litigation of *Davis II*; the communications were made by PMEX (or its counsel), a party to *Davis II*; PMEX's filings and statements in *Davis II* were designed to achieve dismissal of the case; and those communications clearly bore some logical relation to its defense. (See *Silberg, supra,* 50 Cal.3d at p. 212.) "The '[p]leadings and process in a case are generally viewed as privileged communications.' " (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058.) That is so even if filings and in-court statements are alleged to be *perjurious.* (*Id.* at pp. 1058, 1062 [filing allegedly perjured declaration of service of process covered by the privilege]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 ["The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' "].)

In short, the litigation privilege immunizes PMEX from the tort liability pleaded in counts 4 through 9 of Davis's complaint. (See, e.g., *Finton, supra,* 238 Cal.App.4th at p. 212.) For this additional reason, Davis does not meet his prong-two burden of establishing the minimal merit of these claims.

D.    *Conclusion*

For the reasons discussed, we affirm the order granting PMEX's anti-SLAPP motion as to counts 4 through 9 of Davis's complaint, resting on alleged litigation misconduct by PMEX and its counsel in *Davis II*. We reach a different result as to counts 1 through 3, concluding PMEX did not meet its

seeks equitable relief in counts 4 through 9, such claims are barred under res judicata as discussed *ante.*

24

moving burden to show those claims arose out of protected activity. Our partial reversal requires us to also reverse the order granting attorney's fees to PMEX as the prevailing party on an anti-SLAPP motion. (§ 425.16, subd. (c)(1).) On remand, the trial court must determine an appropriate award attributable to prevailing on the anti-SLAPP motion as to causes 4 through 9, including fees incurred in connection with this appeal. (See *Contreras, supra,* 5 Cal.App.5th at p. 421.)[15]

---

[15] Although our ruling renders Davis the prevailing party on the anti-SLAPP motion as to the employment-related claims asserted in counts 1 through 3 of his complaint, no reasonable argument can be made that Davis is entitled to an award of prevailing party attorney's fees and costs under section 425.16, subdivision (c)(1). By moving to strike those three causes of action with the rest, PMEX's argument was neither frivolous nor solely intended to cause unnecessary delay.

DISPOSITION

The order granting PMEX's anti-SLAPP motion is vacated. The superior court is directed to enter a new order granting the motion as to the litigation-misconduct claims asserted in counts 4 through 9 of Davis's complaint, but denying it as to the employment-related claims asserted in counts 1 through 3 of his complaint and conducting further proceedings as appropriate. On remand, the court is also directed to make an appropriate award of attorney's fees to PMEX under section 425.16, subdivision (c)(1) for prevailing on its motion to strike as to counts 4 through 9 of the complaint, including fees incurred in connection with defending the trial court's order as to those six counts on appeal.

In the interest of justice, each party shall bear its own costs on appeal.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

26