Filed 6/14/22  Weischadle v. City of L.A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GLORIA WEISCHADLE, | B310430 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV17245) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEALS from orders, judgment and postjudgment order of the Superior Court of Los Angeles County, Yolanda Orozco, Judge.  Affirmed.

Gloria Weischadle, in pro. per., for Plaintiff and Appellant.

Vanderford & Ruiz, Rodolfo F. Ruiz and John R. Meehan for Defendants and Respondents City of Los Angeles.

Kaufman, Dolowich Voluck, Andrew J. Waxler and John T. Lupton for Defendants and Respondents Robert Charboneau and Law Offices of Robert Charboneau.

_____

After an unsuccessful premises liability action against the City of Los Angeles, Gloria Weischadle sued the City and its counsel, Robert Charboneau and the Law Offices of Robert Charboneau, alleging they had engaged in fraud, evidence suppression and other discovery-related misconduct that left her unable to prove her case. The City and the Charboneau defendants filed special motions to strike, asserting each claim in Weischadle's complaint arose out of protected activity within the meaning of Code of Civil Procedure section 425.16[1] and lacked even minimal merit. The trial court granted the special motions to strike and the related motions for attorney fees.

On appeal[2] Weischadle contends the trial court erred in finding her claims were subject to a special motion to strike because they did not arise from protected activity in connection with a public issue and she alleged illegal activity not subject to the protections of section 425.16. She also contends she

---

[1] Statutory references are to this code unless otherwise stated.

[2] Weischadle filed timely notices of appeal from the November 10, 2020 orders granting the special motions to strike (case no. B310430). On March 15, 2021 Weischadle also filed a timely notice of appeal from the March 4, 2021 postjudgment order granting the Charboneau defendants' motion for attorney fees (after entry of judgment dismissing Weischadle's action against them) and a premature notice of appeal from the court's February 17, 2021 prejudgment order granting the City's attorney fee motion (case no. B311808). We deem the premature notice of appeal to be a timely appeal from the March 24, 2021 judgment entered dismissing Weischadle's action against the City and awarding the City its attorney fees (Cal. Rules of Court, rule 8.104(d)). We ordered the appeals consolidated.

demonstrated her claims had minimal merit.  Because the orders granting the special motions to strike were erroneous, she argues, so too were the court's attorney fee orders.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Weischadle's Premises Liability Action Against the City*

Weischadle fell on an escalator at Los Angeles International Airport in September 2015 and sued the City (named in the lawsuit as Los Angeles World Airports (LAWA), a City department) for premises liability.  During most of the trial Weischadle represented herself; the Charboneau defendants represented the City.  After Weischadle failed to present any admissible evidence to support her claim of dangerous condition of public property, the trial court granted the City's motion for nonsuit.  Weischadle moved for a new trial, arguing the court had erred in sustaining the City's objections to her proposed evidence on hearsay grounds and excluding it.  She also argued the City had failed to produce critical evidence she had requested during discovery, such as surveillance video footage depicting the accident and the identities of, and contact information for, two employees of the Transportation Security Administration (TSA) who had witnessed the accident.  The court denied Weischadle's new trial motion and entered judgment in favor of the City.

Our colleagues in Division Four of this court affirmed the judgment on appeal, rejecting Weischadle's argument the City had interfered with her ability to present witnesses at trial. (*Weischadle v. Los Angeles World Airports* (Oct. 28, 2019, B294949 [nonpub. opn.].)  As to Weischadle's claims of discovery misconduct, the court stated, "It is unclear from this record whether [Weischadle's] claim of discovery misconduct was fully litigated below, nor has she demonstrated how any of LAWA's

3

asserted objections were deficient. Indeed, the partial set of discovery requests and responses in the [limited] record before us demonstrates that LAWA did in fact substantively respond to some of Weischadle's requests, contrary to her claim. 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].'" (*Weischadle v. Los Angeles World Airports, supra*, B294949.)

      2. *Weischadle's Fraud Action Against the City and the Charboneau Defendants*

Weischadle filed the case at bar in May 2020 purporting to allege 11 causes of action: fraud, evidence tampering, witness tampering, conspiracy, conspiracy in concert, aiding and abetting, defamation, false representation, intentional infliction of emotional, physical and mental distress, gross negligence and breach of fiduciary duty.[3] Each cause of action was based on the same facts: Weischadle had requested information and evidence from the City during discovery in the premises liability action; the City and the Charboneau defendants responded either with improper objections or false assertions that the City did not possess the evidence requested; the City and the Charboneau defendants interfered with, withheld or destroyed the evidence;

---

[3]     Weischadle filed an earlier lawsuit against the Charboneau defendants alleging substantially similar claims, but voluntarily dismissed that suit after the superior court issued a tentative ruling granting the Charboneau defendants' special motion to strike. The court awarded the Charboneau defendants attorney fees as the prevailing parties on the motion notwithstanding Weischadle's voluntary dismissal of her complaint. We affirmed that order. (*Weischadle v. Charboneau* (May 20, 2021, B304032) [nonpub. opn.].)

4

and as a result of the City's and the Charboneau defendants' false statements and litigation misconduct in the premises liability action, she had been unable to prove her case at trial and suffered additional harm to her emotional and physical well-being and her reputation.[4]

      3. *The City's and the Charboneau Defendants' Special Motions To Strike*
          a. *The moving papers*

The City and the Charboneau defendants filed special motions to strike Weischadle's complaint pursuant to section 425.16, arguing each claim was based on oral or written statements offered during, or in connection with, a judicial proceeding, protected activity within the meaning of section 425.16, subdivision (e)(1) or (2), and lacked minimal merit. In a declaration submitted in support of both motions,

---

[4] In support of her claims Weischadle alleged the City and the Charboneau defendants engaged in the following actions during the premises liability lawsuit: Provided false responses and made improper objections to her written discovery requests; bullied, mocked and accused her of lying about the accident to obtain an undeserved monetary recovery; altered or directed the alteration of the court reporter's transcript of proceedings to remove the bullying statements; suppressed or intentionally destroyed the surveillance footage of the accident; replaced identifying escalator tags at the airport to confuse Weischadle and make it appear she was lying about the escalator on which she fell; and failed to make defense witnesses available on the first day of trial, leaving Weischadle unable to authenticate evidence she needed in her case-in-chief. As a result of all this litigation misconduct, Weischadle alleged, she lost the premises liability action.

Robert Charboneau stated Weischadle had informally asked him early in the litigation for the identities of two TSA agents who had witnessed the accident. After consulting with his client, Charboneau learned the City did not possess on-duty information about the TSA employees, who are federal agents. He reported this to Weischadle and suggested she contact TSA directly. In response to Weischadle's request for surveillance footage of the incident, Charboneau told Weischadle surveillance footage, which otherwise would have been preserved, had been recorded over as a matter of airport policy when Weischadle, who had not wanted to miss her flight, did not report the accident to LAWA in a timely fashion. Weischadle served formal written discovery seeking the same information and filed two ex parte motions challenging the City's responses, which were consistent with Charboneau's informal statements to Weischadle. The trial court denied both ex parte requests for lack of emergency and invited her to file a noticed motion. She never did.

        b. *Weischadle's opposition*

In her opposition papers Weischadle argued section 425.16 did not apply because her complaint alleged causes of action that arose from the City's and the Charboneau defendants' illegal conduct during the premises liability action and involved a private, not a public, issue.

Weischadle also argued her claims had at least minimal merit. In a declaration submitted with her opposition papers, Weischadle stated the City and the Charboneau defendants had lied to her when they claimed they did not know the identities of the TSA witnesses. Citing exhibit 25 to her declaration, which appears to be a July 7, 2018 email from the TSA Contact Center stating, "After careful review, we have determined that your

6

inquiry falls outside TSA's jurisdiction," Weischadle argued the City, not TSA, was responsible for providing the requested information. (Exhibit 25, which was excluded from evidence at the hearing on the special motion to strike for lack of authentication, did not identify the nature of Weischadle's inquiry.)

In addition, Weischadle asserted, as she had in the earlier premises liability action, the City and the Charboneau defendants had tampered with evidence by intentionally withholding from trial or destroying surveillance camera footage to undermine her ability to prove her case; removing or obtaining the removal from the reporters' transcript of bullying comments made to her during her deposition or in court; and failing to voluntarily make defense witnesses available the first day of trial after it became clear she could not authenticate the evidence she wanted to introduce in her case-in-chief.

Weischadle also submitted with her opposition papers many of the same exhibits she had sought unsuccessfully to introduce at trial in the premises liability action. Weischadle argued those exhibits demonstrated the City had known of the dangerous condition of the airport escalators caused by power surges and had tampered with evidence by replacing airport escalator identification tags with different identification tags to confuse Weischadle and make it appear Weischadle had fallen on a different escalator.

c. *The City's and the Charboneau defendants' objections; Weischadle's response*

The City and the Charboneau defendants objected to all of Weischadle's exhibits for lack of authentication, among other grounds. Responding to the authentication objections only, Weischadle stated in a supplemental declaration she would authenticate the exhibits "during the discovery process of the litigation."

d. *The trial court's ruling on objections and order granting the special motions to strike*

The court sustained the Charboneau defendants' objections to all of Weischadle's exhibits for lack of authentication and excluded them. The court sustained the City's objection on authentication grounds to Weischadle's exhibit 38, her alleged notice of tort claim, and otherwise declined to rule on the remainder of the City's objections, explaining they were not material to the court's disposition of the City's motion.

After ruling on the defendants' objections, the court granted both special motions to strike. The court concluded every cause of action against both the Charboneau defendants and the City arose from protected activity pursuant to section 425.16, subdivision (e)(1) and (2), and Weischadle had failed to demonstrate her claims had minimal merit. In particular, the court ruled the protected activities Weischadle had asserted against the Charboneau defendants—statements made by Robert Charboneau during discovery and at trial in the prior premises liability action—were absolutely privileged pursuant to Civil Code section 47, subdivision (b), and Weischadle had presented no admissible evidence suggesting the Charboneau defendants

8

had destroyed or altered evidence so as to come within an exception to that privilege.

As to Weischadle's claims against the City, the court ruled Weischadle provided no admissible evidence she had filed a government claim, a necessary prerequisite to her lawsuit against the City. Alternatively, even if her exhibit 38 "notice of claim" were admissible and sufficient to constitute a proper government claim, the court ruled the City was immune from liability absent an authorizing statute, and Weischadle had cited none. Weischadle's citation to Government Code section 835 (liability for dangerous condition of property) did not assist her, the court ruled, because that claim, already litigated and decided, was barred by the doctrine of res judicata/claim preclusion.

4. *The Motions for Costs and Attorney Fees*

The City and the Charboneau defendants moved to recover their costs and attorney fees pursuant to section 425.16, subdivision (c). The court granted both motions, awarding the City $54,958.25 in attorney fees and costs and the Charboneau defendants $34,935.75 in attorney fees and costs.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of a person's right to free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike unless, the court determines that the plaintiff has established there is a probability that the plaintiff will prevail on the claim." (§ 425.16,

9

subd. (b)(1); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995,

10

1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

As to the first step of the analysis, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063; accord, *Bonni*, *supra*, 11 Cal.5th at p. 1009.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni*, at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060 [same].)

A motion pursuant to section 425.16 need not challenge an entire cause of action as pleaded in the complaint. (*Bonni*, *supra*, 11 Cal.5th at p. 1010; *Baral*, *supra*, 1 Cal.5th at p. 382.) Rather, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010; accord, *Baral*, at p. 395; *Musero v. Creative Artists Agency, LLC* (2021) 72 Cal.App.5th 802, 815; see *Park*, *supra*, 2 Cal.5th at p. 1063 [in determining whether a claim arises from protected activity, "courts should consider the elements of the

11

challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability"].)

"As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940;[5] accord, *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "'We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'" (*Monster*

---

[5] Although the Supreme Court in *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th 931 referred generally to "competent admissible evidence," the Court held evidence that is potentially admissible at trial, but not presented in admissible form, could be considered in determining whether the plaintiff had demonstrated a probability of success on the merits: "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Id.* at p. 949.)

*Energy*, at p. 788; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [the court should grant the section 425.16 motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim'"].)

We review de novo an order granting or denying a special motion to strike under section 425.16. (*Wilson*, *supra*, 7 Cal.5th at p. 884; *Park*, *supra*, 2 Cal.5th at p. 1067.)

>  2. *Weischadle's Claims Against the Charboneau*
>      *Defendants and the City Arose from Protected Activity*

The trial court ruled each of Weischadle's claims against the Charboneau defendants and the City arose from oral and written statements made during the premises liability action, protected activity within the meaning of section 425.16, subdivision (e)(1) and (2). (See *Bonni, supra*, 11 Cal.5th at p. 1024 ["claims that arise out of the filing of a suit arise from protected activity for purposes of the anti-SLAPP statute"]; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [anti-SLAPP statutes protects not only litigants, but also their attorneys' litigation-related statements]; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 408-409 ["'[u]nder the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute"]; *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210 (*Finton Construction*) [same].)

That Weischadle alleged the communications were fraudulent did not remove them from the protection of the anti-

13

SLAPP statute.  (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [claim alleging fraud during lawsuit settlement negotiations was based on protected activity; because alleged fraudulent statement was made in connection with issue under consideration or review by a judicial body, it was protected activity within the meaning of section 425.16, subdivision (e)(1)]; *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 779 [party's written discovery responses during bankruptcy litigation, including any omissions in its written responses, were protected activity within meaning of section 425.16]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123 [claim of fraudulent concealment during settlement discussions was based on protected activity within meaning of section 425.16, subdivision (e)(1)].)

Weischadle contends the court erred in granting the special motions to strike because her claims involve a private issue and alleged illegal activity, the same two arguments she made, and we rejected, in *Weischadle v. Charboneau* (May 20, 2021, B304032) [nonpub. opn.].  They fare no better here.

Contrary to Weischadle's contention, when, as here, the "defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e) (speech or petitioning before a legislative, executive, judicial, or other official proceeding, or statements made in connection with an issue under review or consideration by an official body), the defendant is not required to independently demonstrate that the matter is a 'public issue' within the statute's meaning." (*Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 600; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.)

Weischadle's reliance on *Flatley v. Mauro* (2006) 39 Cal.4th 299 to argue the anti-SLAPP statute does not apply because her complaint alleged illegal conduct—witness and evidence tampering by the City and the Charboneau defendants in the premises liability action— is also without merit.  The *Flatley* Court held, if "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.* at p. 320; accord, *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 965; see *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446 ["[w]e understand *Flatley* to stand for this proposition:  when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law"].)  Here, the Charboneau defendants vigorously disputed the allegations of any illegal conduct and supplied evidence contradicting Weischadle's declaration.  When, as here, the conduct is neither conceded to be illegal nor is illegal as a matter of law, the allegations of illegality relate to the second prong of the anti-SLAPP analysis, not the first. (*Flatley,* at p. 316 [if "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits"]; *Seltzer,* at p. 965 [same].)

Finally, Weischadle adds that "none of the documents" in this case was introduced in the prior premises liability action. We are uncertain as to which documents she refers or the significance of the fact they were excluded from evidence at the

15

premises liability trial.  Weischadle does not suggest the statements that form the bases of her claims were not made in connection with that action.  In fact, her allegations are directly to the contrary.

       3.   *Weischadle Did Not Carry Her Burden To Demonstrate Her Claims against the Charboneau Defendants Had Minimal Merit*

Civil Code section 47, subdivision (b), bars all tort claims other than for malicious prosecution based on statements or other communications made in a judicial proceeding.[6]  (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 322; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.)  "The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants . . . [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.)  The privilege also "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.)  "Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and

---

[6]     Civil Code section 47 provides in part: "A privileged publication or broadcast is one made:  [¶] . . . [¶]  (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Ibid*.; accord, *Flatley*, at p. 322.) "To further these purposes, the privilege has been broadly applied." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955; see *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 ["communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability"].)

"The usual formulation [of the litigation] privilege [is that] the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 212; see *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [litigation privilege bars cause of action "provided that there is some reasonable connection between the act claimed to be privileged and the legitimate objects of the lawsuit in which that act took place"].) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm." "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law. [Citation.] Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913; accord, *Finton Construction, supra*, 238 Cal.App.4th at p. 212.)

Weischadle contends the court erred in concluding all her claims were barred by the litigation privilege. Relying on Civil Code section 47, subdivision (b)(2), which excludes from the protection of the privilege "any communication made in furtherance of an act of intentional destruction undertaken for

17

the purpose of depriving a party to litigation of the use of that evidence," Weischadle asserts the Charboneau defendants intentionally destroyed the surveillance footage. However, she provided no evidence to support that claim. At most, Weischadle posited the airport officials must have known about the accident because she reported it on the day it occurred to TSA personnel who took her name and telephone number. Accordingly, a trier of fact could infer the City's explanation for failing to preserve the surveillance footage—that it did not know about the accident because she did not report it in a timely manner—was false. Even if that analysis permitted an inference of intentional spoliation of evidence by the City prior to trial, Weischadle submitted nothing to indicate the Charboneau defendants represented the City at the time the surveillance footage was lost, let alone knew about, advised or otherwise participated in the purported spoliation. Neither Weischadle's allegations in her complaint nor the statements in her declaration, unsupported by personal knowledge, are sufficient to support an inference the Charboneau defendants engaged in any conduct that would come within the exception to the litigation privilege. (See *Monster Energy Co. v. Schechter, supra,* 7 Cal.5th at p. 795 [while we must resolve all conflicts and inferences with respect to the evidence in the anti-SLAPP context in favor of plaintiff, "speculative inferences not supported by the evidence proffered may not be considered"].)

4. *Weischadle Failed To Demonstrate Her Claims Against the City Had Minimal Merit*

Weischadle contends she demonstrated minimal merit as to her claims against the City, once again arguing that Civil Code section 47, subdivision (b)(2), prevents the City from claiming its

intentional and bad faith spoliation of evidence, among other evidence tampering, was protected by the litigation privilege. However, the court did not rely on the litigation privilege to conclude Weischadle had not carried her burden. Rather, it found Weischadle had provided no admissible evidence she submitted a government claim, a necessary prerequisite for a tort claim against the City. (See Gov. Code, § 945.4; *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906 ["[c]ompliance with the claim requirement is a condition precedent to suing the public entity"].)

Weischadle challenges this aspect of the court's ruling, pointing to her exhibit 38 "notice of claim," dated March 19, 2020, a little less than two weeks before she filed the case at bar. The court excluded that exhibit for lack of authentication. Although Weischadle asserted in the trial court she would authenticate her exhibits during discovery, she provided no information as to how she intended to cure the defect or, at least as to exhibit 38, why additional discovery was necessary for her to authenticate her own notice of claim.[7] Weischadle's reliance in her appellate brief on California Rules of Court, rule 8.124(g), to cure the evidentiary defect is misplaced.[8]

---

[7] While the party opposing a special motion to strike may rely on potentially admissible evidence even though not presented in admissible form (see *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 949), if the moving party objects, it is the responsibility of the opposing party to cure the evidentiary defect or to demonstrate it is curable. (*Ibid.*) Weischadle failed to do either.

[8] California Rules of Court, rule 8.124(g), provides, "Filing an appendix constitutes a representation that the appendix consists of accurate copies of documents in the superior court file."

Moreover, even if exhibit 38 constituted a proper government claim under Government Code section 910 for purposes of the City's motion, Weischadle failed to demonstrate any exceptions to the City's statutory immunities. (See *State ex rel Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009 ["a public entity is *not* liable [for an injury] '[e]xcept as otherwise provided by statute,'" citing Gov. Code, § 815, subd. (a)].) The City is absolutely immune from liability for misrepresentations, whether negligent or intentional (Gov. Code, § 818.8), necessarily defeating Weischadle's claims the City committed fraud when it represented in discovery responses the surveillance footage had been destroyed as a matter of airport policy or told her it did not know the identities of the TSA personnel. (See *Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1252-1253 [public entity immunized under Government Code section 818.8 for causes of action for fraud and deceit, including fraudulent concealment; while public employee may be liable for fraud under certain circumstances under Government Code section 822.2, public entity is absolutely immune].)[9] As for Weischadle's claims unrelated to fraud or

Although this rule makes clear records submitted to the trial court need not be independently authenticated in the appellate court, Weischadle's authentication failure occurred in the trial court.

[9] Weischadle's spoliation claim also fails because there is no tort liability for spoliation of evidence when, as here, the victim learns about the spoliation prior to trial. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 17-18 ["[w]e hold that there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated

deceit (negligence, defamation and intentional infliction of emotional distress), although Government Code section 815.4 allows liability to be imposed on a public entity for the tortious acts of independent contractors, as discussed Weischadle provided no evidence the Charboneau defendants committed any tortious acts.

5.  *The Court Did Not Err in Granting the City's and the Charboneau Defendants' Motions for Attorney Fees*

Subject to certain exceptions not pertinent here, a prevailing defendant on a special motion to strike is entitled to recover his or her attorney's fees and costs.  (§ 425.16, subd. (c)(1).)[10]  Weischadle's challenge to the court's attorney fee orders is based entirely on her contention the court erred in granting the special motions to strike.  In light of our holding the court did not err in granting those motions, we similarly reject Weischadle's challenge to the attorney fee orders.

---

evidence is relevant, in cases in which, as here, the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action"].)

[10]    When, as here, the challenge to the court's ruling is directed to the statutory entitlement to attorney fees, and not the amount, our review of that legal issue is de novo.  (*Monster Energy Co. v. Schechter, supra*, 7 Cal.5th at p. 788; *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 252-253.)

## DISPOSITION

The trial court's orders granting the City's and the Charboneau defendants' special motions to strike and the orders awarding attorney fees are affirmed.  The City and the Charboneau defendants are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


WISE, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.