Filed 6/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FINTON CONSTRUCTION, INC., | |
| Plaintiff and Appellant, | G050093 |
| v. | (Super. Ct. No. 30-2013-00650607) |
| BIDNA & KEYS, APLC et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

The Layfield Law Firm, Philip J. Layfield and Bradley Wallace for Plaintiff and Appellant.

Bidna & Keys and Richard D. Keys for Defendants and Respondents.

\*          \*          \*

This is an appeal from an order granting defense motions pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute.[2] Plaintiff Finton Construction, Inc. (FCI or plaintiff) sued defendants Bidna & Keys, APLC (B&K), Howard N. Bidna, and Jon Longerbone (collectively defendants) for conversion, receipt of stolen property, and injunctive relief. These causes of action arose from defendants' receipt of an allegedly stolen hard drive pertinent to a pending case in Los Angeles. Defendants are the attorneys of record in that case. They moved to dismiss under the anti-SLAPP statute, arguing the litigation privilege applied and the complaint failed to state a cause of action as a matter of law. The trial court granted the motion, finding defendants' actions privileged and that plaintiff had failed to demonstrate a possibility of prevailing on the merits. This appeal followed.

We find FCI's conduct with respect to this entire case demonstrative of a particularly nasty type of scorched earth tactics. A purportedly stolen hard drive, which was placed in the hands of defendants solely for litigation purposes, has resulted in an attempt to disqualify counsel and two efforts to depose counsel in the underlying case, a police report, complaints to the State Bar of California, and this entirely derivative and unmeritorious second lawsuit. FCI's overreach does not suggest zealousness or righteousness, but a calculated effort to undermine the parties in the underlying case by turning their attorneys into fellow defendants.

While we strongly suspect that FCI is the prime mover behind the prosecution of this lawsuit, we remind FCI's counsel — and indeed, all attorneys — that while they owe their clients a duty to zealously represent them, that zealousness does not trump the duty they owe the courts and the judicial process to prosecute only lawsuits

---

[1] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2

with merit.  The type of uncivil behavior and specious tactics demonstrated by filing this case represents conduct that brings disrepute to the entire legal profession and amounts to toying with the courts.

Less than 48 hours prior to oral argument, the parties notified us they had reached a settlement.  The court, however, declines the parties' request to dismiss the appeal.  This is a particularly egregious SLAPP, filed against defendants for the sole "crime" of representing their clients in the underlying action.  The lack of civility demonstrated in this case is a matter of public interest.  Moreover, while we cannot be certain, it appears that FCI deliberately decided to keep this action pending until the last possible moment in order to avoid the opinion we write today.  We therefore decide in defendants' favor[3] and publish this case as an example to the legal community of the kind of behavior the bench and the bar together must continually strive to eradicate.

I

FACTS

*The Underlying Lawsuit*

In 2012, B&K filed a lawsuit on behalf of Michael Reeves against FCI and its partners, John Finton and Daniel Tontini, which was styled *Reeves v. Finton Construction et al.*, case No. BC 485148 (*Reeves*).  The case is still pending in Los Angeles County.  The complaint alleged Reeves and Finton began building custom homes as a general contractor in the 1980's and were eventually joined by Tontini.  The company's stock was owned 40 percent each by Reeves and Finton, and 20 percent by Tontini.  From 2000 onward, Reeves ran the company's Orange County branch office.  The company was quite successful, with 2010 revenues exceeding $44 million.  After some financial disputes, the complaint alleged, Finton and Tontini unlawfully conspired

---

[3] We do not dispute defendants' counsel's comment at oral argument that cases settle at various times for various reasons.  Counsel did not wish to discuss further the reasons for settlement.

to reduce Reeves's ownership and ultimately terminate his involvement. Reeves sought an accounting and millions of dollars in damages.

FCI and Finton filed a cross-complaint against Reeves and several FCI employees who left to join Reeves at his new company, MA3 Corporation. Reeves continued building homes in Orange County. Among other alleged acts of past wrongdoing, the cross-complaint alleged Reeves essentially stole FCI's clients and wrongfully solicited its employees. It also alleged that before they left FCI, Reeves and other cross-defendants, including Nicole Lacuesta (also known by her maiden name, Hechanova), copied various "confidential" documents from FCI's Orange County office and copied them to computers at MA3. These documents allegedly included "client lists, project plans, specifications, bid books, and contact information for valued vendors, suppliers and subcontractors." Various computers and cell phones were allegedly stolen. As pertinent here, the cross-complaint alleged unfair competition, conversion, and misappropriation of trade secrets.

In April 2012, not long after the cross-complaint was filed, FCI's counsel, James Evans, sent Bidna a letter stating that on the day the cross-defendants had resigned from FCI, one of them, Jim White, had used a company credit card to purchase a hard drive, which was used to copy files from FCI's computers. Evans claimed FCI owned the hard drive and demanded its return. Bidna responded the hard drive would be returned after his information technology consultant made a copy of the files on it. Evans offered an "inspection" by the consultant overseen by his own expert, but demanded the drive be returned without copying the files, stating that if the drive was copied, "we will take the position that you have taken materials belonging to Finton and/or spoilated evidence." Bidna responded that it was unclear the hard drive had any files belonging to Finton on it, and refused to return it without copying the files.

In July 2012, FCI filed an application for a writ of possession, demanding Reeves turn over the drive White had purchased, a USB flash drive, and all the hard

4

copies of client files in their possession. Reeves apparently opposed, although the opposition is not in the record. The application was eventually resolved in August by way of a stipulated order that directed the drive White had purchased, along with a USB flash drive, be turned over to FCI's computer expert, who made copies of the drives and gave them to Reeves's attorneys. As relevant here, the stipulated order also stated the drives may be used for the purposes of the pending litigation.

Lacuesta was deposed in April 2013. She testified that on the day she left FCI, she copied files that were on the computer that she used at the office. She did not have permission to do so. She stated she had personal files that she wanted copies of, and did not have time to sort through them. She did not make any effort to search or sort through the files. She told Reeves sometime later that she had copied the documents, which were, at some point, transferred to MA3 computers. She eventually turned everything over to the attorneys, B&K.

Immediately thereafter, Evans wrote to Bidna demanding the return of the hard drive Lacuesta testified about. B&K, Attorney Jon Longerbone replied and stated they were willing to give the drive to Evans on the same terms stipulated to in the August 2012 order. Evans did not accept the offer, or provide a reason as to why he would not do so.

This was followed shortly thereafter by the filing of the instant case in May, which we shall discuss below. FCI also filed a report for theft with the Costa Mesa Police Department and complaints with the State Bar of California against Bidna and Longerbone. FCI also filed a motion to disqualify defendants in the underlying case, which they eventually lost. At two different points, the court in the underlying case has denied FCI's motions to depose Bidna.

In June 2013, Reeves filed an application in the underlying case regarding the use of the same drive that was the subject of this case. On October 3, the court entered an order directing defendants to deliver the drive to FCI's computer expert. The

5

expert was to make two exact copies of the drive and deliver one to B&K and one to Evans, with the expert maintaining the original.  The duplicate drive was to be used only for the purposes of the underlying litigation.  In sum, this order was essentially similar to the August 2012 stipulated order.

*The Instant Action*

Less than a month after Lacuesta's deposition, on May 20, FCI filed the instant action against B&K, Bidna, and Longerbone, alleging FCI was entitled to damages for conversion and receipt of stolen property, and for injunctive relief enjoining defendants from deleting, accessing, or in any way using the data on the purportedly stolen drive.

In July, defendants filed a special motion to strike pursuant to the anti-SLAPP statute.  They argued their actions were with the scope of Civil Code section 47 (the litigation privilege) and FCI could not state a cause of action.  FCI argued in its opposition that the anti-SLAPP statute did not apply and it had stated a prima facie case for each cause of action.  As evidence, they submitted an excerpt from Lacuesta's deposition discussing the transfer of the files to the hard drive (as summarized above), and an unreported case from 2005.[4]  FCI's request for judicial notice submitted the cross-complaint, the first amended complaint, and the October 3 court order from the underlying case.  No other evidence was offered by FCI.

In their reply, in addition to their previous arguments, defendants claimed the complaint was moot, given the October 3 order in the underlying action permitting defendants to possess a copy of the hard drive for the limited purpose of using it in that

---

[4] Despite FCI's claim that it was "not citing to the case," it nonetheless referred to it in a footnote in its opposition, stating it would "like to direct the court's attention" to the case. We fail to see the distinction.  Counsel are warned not to cite to cases with no precedential authority.

case. Accordingly, they argued, the order cuts off any claim that defendants were wrongfully in possession of FCI property. With respect to FCI's argument that section 425.16 did not apply, defendants asserted Bidna's unrefuted declaration "conclusively establishes that everything Bidna & Keys did relative to the hard drive and the files on it was in the course and scope of representing its clients in investigating the allegations of [FCI's] cross-complaint," and was, accordingly, protected activity. FCI submitted supplemental briefing arguing the case was not moot, and later, at the court's request, both parties filed supplemental briefs on the issue of communicative conduct.

The motion was decided in February 2014 in defendants' favor. The court concluded the allegations of the complaint were subject to the anti-SLAPP statute, the defendants' actions were subject to the litigation privilege, and FCI had otherwise failed to demonstrate a probability of prevailing.

FCI filed the instant appeal.

II

DISCUSSION

A. *Jurisdiction and Standard of Review*

An order denying a special motion to strike is subject to immediate appeal. (§ 425.16, subd. (i).) We exercise independent judgment to determine whether the motion to strike should have been granted. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B. *The Statutory Framework*

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th

7

809, 815, fn. 2, disapproved of on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)  In response, the Legislature adopted the anti-SLAPP statute, which states:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

As relevant here, acts subject to the statute include:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

The purpose of the statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case.  (See *Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at p. 815, fn. 2.)  It is to be "construed broadly." (§ 425.16, subd. (a).)

Trial courts evaluate motions brought under the statute using a two-step process.  "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.  (§ 425.16, subd. (b)(1).)'"  (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31

8

Cal.4th at p. 733.) If that requirement is met, the court then proceeds to the second step to determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid*.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

*C. Protected Activity*

We must first consider whether the challenged claims arise from acts in furtherance of the defendants' right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e). (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1042-1043.) In doing so, "[w]e examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.)

"We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) We keep in mind that "[i]n the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.) If the mention of protected activity is "only incidental to a cause of action based essentially on nonprotected activity," then the anti-SLAPP statute does not apply. (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414.)

This determination is a very easy one in the instant case. "[A]ny act" (§ 425.16, subd. (b)(1)) "includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by

9

attorneys in representing clients in litigation.  [Citations.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)  "Under the plain language of section 425.16, subdivisions (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute. . . ." (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480.)

It is unquestionable and undisputed that the acts alleged in the complaint all arise out of defendants' representation of their clients in the underlying case.  The only reason the hard drive was ever turned over to defendants is because they were counsel in that matter.  The only purported reason defendants are being sued is because they refused to unconditionally return the hard drive, which constitutes potential evidence in the underlying matter.  In reality, it seems they are being sued for representing their clients.

FCI's only real argument on this point is that where the activity at issue is illegal as a matter of law, the defendant is precluded from availing itself of the anti-SLAPP statute, citing *Flatley v. Mauro*, *supra*, 39 Cal.4th at page 320.  *Flatley*, however, is a very narrow exception.  It applies only "where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence . . . ." (*Id.* at p. 316.)  In *Flatley,* the conclusive evidence was an extortionate letter from the defendant.  (*Id.* at pp. 307-309.)  Subsequently it has been recognized that "the Supreme Court's use of the phrase 'illegal' [in *Flatley*] was intended to mean criminal, and not merely violative of a statute." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 (*Mendoza*); see also *Cabral v. Martins*, *supra*, 177 Cal.App.4th at p. 482 [evading child support obligations insufficient to take case outside of scope of anti-SLAPP statute].)  The *Mendoza* court noted:  "[A] reading of *Flatley* to push any statutory violation outside the reach of the anti-SLAPP statute would greatly weaken the constitutional interests which the statute is designed to protect." (*Mendoza*, *supra*, 182 Cal.App.4th at p. 1654.)  FCI, as we will discuss *post*, has come nowhere

10

close to conclusively establishing criminal conduct on the part of defendants. Therefore, this narrow exception does not apply.

Defendants have met their burden to demonstrate their conduct arose from protected activity. We therefore turn to the second prong of the anti-SLAPP statute.

## D. Likelihood of Prevailing

In the second step, we must determine whether plaintiff has demonstrated a probability of prevailing on the merits. To do so, plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105.)

"Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Accordingly, FCI "must produce evidence that would be admissible at trial. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

### 1. Litigation Privilege

The litigation privilege, as pertinent here, states: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ." (Civ. Code, § 47, subd. (b).) "The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) The privilege also "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.)

"Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution.  [Citations.]  Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation . . . .  [Citations.]"  (*Silberg v. Anderson*, *supra*, at p. 212.)  "The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution. [Citation.]"  (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333.)  "Any doubt about whether the privilege applies is resolved in favor of applying it.  [Citation.]"  (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

A broad range of conduct has been determined by courts to be within the scope of the privilege, including activity preparatory to litigation.  (See, e.g., *Gootee v. Lightner* (1990) 224 Cal.App.3d 587, 589 [administering of psychological testing and destroying raw data within scope of privilege].)  Indeed, even materials obtained illegally by the litigants and turned over to attorneys have been subject to the privilege.  (*Scalzo v. Baker* (2010) 185 Cal.App.4th 91, 102 (*Scalzo*).)  Transmitting potential evidence in pending litigation between a client and an attorney is a communicative act relating to the preparation of the case.

In *Scalzo*, which involved a dispute between two brothers, the defendant, Martin Scalzo, illegally obtained Frederick Scalzo's credit card statements to find information that might help his case.  Frederick sued both Martin and his attorneys and accountants for injunctive relief.  As to the attorneys and accountants, the court held the litigation privilege applied, finding "Frederick has made no claim, or factual showing, that they obtained the documents in violation of the law, or used the documents in any

12

manner outside of the litigation context."[5]  (*Scalzo*, *supra*, 185 Cal.App.4th at p. 102.) "'*Silberg* leaves no room for doubt:  For policy reasons, even an act committed fraudulently or with malice is privileged under section 47, subdivision (b)'  [Citations.]" (*Ibid.*)

Such reasoning compels the same result here.  Without the litigation privilege, attorneys would simply be unable to do their jobs properly.  No attorney can litigate a trade secret case without examining the disputed materials to determine if they constitute trade secrets or even contain any relevant data at all.  Indeed, FCI, by entering into a stipulation in the underlying case allowing defendants to review other materials for the purposes of litigation only, can hardly deny this obvious point.  The same concern likely led the trial court in the underlying case to the same conclusion, resulting in the October 2013 order permitting defendants to maintain a copy.  The litigation privilege, therefore, applies to defendants' actions in terms of both receiving and retaining the drive until it was turned over pursuant to the court's order in the underlying case.

### 2. *Failure to State a Claim*

Even if the litigation privilege did not render prevailing on the merits impossible, FCI has nonetheless failed to meet its burden to show it could have done so. A cause of action for conversion requires a plaintiff to show:  "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066.)  The criminal statute for receipt of stolen property[6]

---

[5] FCI tries mightily to distinguish *Scalzo*, arguing that the mere allegation defendants illegally obtained and retained the drive is sufficient.  They are wrong.  An anti-SLAPP motion, as we will discuss *post*, requires evidence, not mere allegations.

[6] We assume for the sake of argument only that receipt of stolen property is also a civil tort.

13

(Penal Code, § 496, subd. (a)) requires demonstrating "(1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew that the property was stolen. [Citation.]"[7] (*People v. Moses* (1990) 217 Cal.App.3d 1245, 1250.)

Thus, both of these claims turn on the question of whether the drive was indeed stolen, or put another way, whether FCI had the right to ownership or possession. The only evidence FCI submitted in support of its anti-SLAPP motion (besides an uncitable case) was an excerpt from Lacuesta's deposition. An anti-SLAPP motion is an evidentiary motion. Once the court reaches the second prong of the analysis, it must rely on admissible evidence, not merely allegations in the complaint or conclusory statements by counsel. FCI's evidence falls far short of what is needed to establish a prima facie case of either conversion or receipt of stolen property.

In her deposition, Lacuesta does not admit to stealing, or wrongfully taking or copying anything. She testified that she did not ask Finton or Tontini (or Reeves, for that matter) for permission to make the copy because she did not "think I needed to." FCI offered no evidence to refute this statement.

Additionally, merely alleging ownership of the drive or the information contained on it is insufficient to establish conversion. The record reflects that Reeves is still a 40 percent partner in FCI, and therefore, it is far from clear that he did not have a right equal to that of Finton or Tontini in terms of access to and copying of any FCI records. FCI's scant evidence in support of its opposition to the anti-SLAPP motion fails to establish any of these facts. Further, even if FCI was the undisputed owner, there was no evidence whatsoever offered to prove that defendants "knowingly" received stolen property at any time. At best, the status of the property continues to be disputed. FCI,

---

[7] FCI's final claim is for "injunction," but an injunction is a remedy, not a cause of action. Without another valid cause of action that would warrant such relief, it cannot stand.

14

accordingly, failed to "'demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester*, *supra*, 28 Cal.4th at p. 821.) The anti-SLAPP motion was properly granted.[8]

## III

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. Unfortunately, as attorneys representing themselves, they are not entitled to the legal fees awarded by right to prevailing defendants in anti-SLAPP cases. (§425.16, subd. (c)(1).)


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

---

[8] Because the anti-SLAPP motion was properly decided on its merits, we need not address whether mootness provides an additional ground for dismissal.