Filed 11/17/22  Alston v. McCormick Barstow CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERIC ALSTON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>McCORMICK BARSTOW LLP,<br><br>    Defendant and Respondent. | F082618<br><br>(Super. Ct. No. 20CECG02657)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Eric Alston, in pro. per., for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP and Todd W. Baxter for Defendant and Respondent.

-ooOoo-

Plaintiff Eric Alston, who has been a self-represented litigant throughout these proceedings, sued defendants McCormick Barstow LLP and two of its attorneys, Jessica Boujikian and Anil Pai (collectively, McCormick Barstow), for providing Alston's mental health records, which contained his social security number, to an expert witness McCormick Barstow retained to offer an opinion on the standard of care in a professional negligence action Alston brought against McCormick Barstow's client.  Alston alleged by providing his mental health records to their retained expert, McCormick Barstow

invaded his privacy and violated Welfare and Institutions Code section 5330 and Civil Code section 1798.85 et seq.

McCormick Barstow responded by filing an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16.[1] McCormick Barstow contended Alston's claims arose from protected activity, specifically their legal representation of their client in the professional negligence case, and Alston could not establish a reasonable probability he would prevail on any of his claims because the litigation privilege protected their actions. The trial court agreed and granted the motion to strike.

Based on our independent review of the record, we agree with the trial court and conclude: (1) Alston's claims arose from McCormick Barstow's litigation conduct, which is protected by section 425.16, subdivision (e)(2); and (2) Alston failed to carry his burden of showing a reasonable probability he would prevail on his claims because the litigation privilege bars his claims. We therefore affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Sacramento Action*

In July 2018, Alston commenced an action in Sacramento County Superior Court in case No. 34-2018-00236505 against various defendants including Maria Candalla, R.N. McCormick Barstow served as Candalla's counsel of record. In December 2018, Alston filed another complaint in Sacramento County Superior Court in case No. 34-2018-00247179 (the Sacramento action), which also named Candalla as a defendant and alleged a claim of professional negligence against her.[2]

---

[1] A "SLAPP" is a strategic lawsuit against public participation and a special motion to strike under section 425.16 is referred to as an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1.) Undesignated statutory references are to the Code of Civil Procedure.

[2] The complaint also alleged a cause of action for violation of Civil Code section 52.1, but the court sustained McCormick Barstow's demurrer to that claim and while Alston was given leave to amend, he did not do so.

In the professional negligence claim, Alston alleged Sacramento County Correctional Health Services knew of his ailments and medical information, including that he was allergic to Naproxen, as the last time Correctional Health Services gave him the medication he could not breathe and almost died in his cell. Alston attached a portion of his medical records from Correctional Health Services from the years 2013 and 2017 to the complaint and asserted it should be clear from those records that he cannot take Naproxen because he is allergic to it. He alleged that while in the Sacramento County jail, Candalla breached her professional duties when she tried to give him Naproxen to treat his claimed injuries despite his protestations that he was allergic to it and by not providing him with medical services.

In the scope of their representation of Candalla, McCormick Barstow retained Kimberly Pearson, R.N., as an expert witness to provide opinions on the standard of care provided to Alston with respect to the acts alleged in the complaint and whether Candalla caused, contributed to, or was a substantial factor in causing Alston's alleged injuries. To facilitate Pearson's ability to form an expert opinion, McCormick Barstow provided her with Alston's medical records from the Sacramento County Department of Health Services, Correctional Health Services Medical Records Unit (Correctional Health Services). McCormick Barstow provided Alston's medical records to Pearson for the sole purpose of representing Candalla in the Sacramento action.

In September 2019, McCormick Barstow filed an opposition to Alston's summary judgment motion on Candalla's behalf, which included a statement of evidence and Pearson's declaration which provided her expert opinion on the standard of care. Pearson stated in her declaration that she reviewed Alston's "medical records" from Correctional Health Services. McCormick Barstow later filed a notice of errata and correction to the statement of evidence to include Pearson's signed declaration.

### *This Lawsuit*

Alston commenced this action against McCormick Barstow in Sacramento County Superior Court in February 2020. Alston's complaint alleges the action arises from McCormick Barstow's "disseminating privileged documents to their Nurse Expert Witness voluntarily." The complaint alleges McCormick Barstow issued a subpoena for Alston's medical records from Correctional Health Services on June 28, 2019, and McCormick Barstow later filed Pearson's declaration in the Sacramento action in which she attested to reviewing Alston's medical records, which included his mental health records and contained his social security number. The complaint charges that McCormick Barstow "voluntarily disseminated Plaintiff['s] Mental Health Records and Social Security number to a Nurse Expert witness" and in doing so, McCormick Barstow "violated the Plaintiff[']s right of privacy to Both his Mental Health records and Social Security Number." Alston alleges the dissemination of his mental health records caused him "discomfort, harm, unwarranted suffering, mental anguish, mental damages/injuries, sleep disturbance, anger depression, damages to reputation, and dignity and loss of legal right to privacy, and other emotional damages."

The complaint alleges three causes of action: (1) invasion of privacy under article I, section 1 of the California Constitution; (2) dissemination of Alston's mental health records to Pearson in violation of Welfare and Institutions Code section 5330; and (3) dissemination of his social security number to Pearson in violation of Civil Code section 1798.85 et seq. Alston seeks $10 million in compensatory, general, and special damages, as well as punitive and exemplary damages.

### *The Anti-SLAPP Motion*

In March 2020, McCormick Barstow filed a special motion to strike Alston's complaint pursuant to section 425.16, asserting Alston's action arose from protected activity, namely, McCormick Barstow's legal representation in the Sacramento action, and Alston could not establish a probability of prevailing on his claims because the

4.

litigation privilege protected McCormick Barstow's actions. Before the motion was heard, the lawsuit was transferred to Fresno County Superior Court on McCormick Barstow's motion to transfer. McCormick Barstow refiled the motion in Fresno County Superior Court in November 2020.

Alston filed his opposition to the motion in December 2020. Alston argued: (1) his mental health records were not covered by the subpoena; therefore, McCormick Barstow received them inadvertently and was obligated to refrain from examining them and to notify the sender that it received privileged documents; (2) the anti-SLAPP statute does not apply because McCormick Barstow's conduct was illegal as a matter of law; and (3) his causes of action are exempt from the litigation privilege. Alston did not provide any evidence in support of his claims.

On February 3, 2021, McCormick Barstow filed a reply to Alston's opposition along with a declaration from attorney Todd W. Baxter. McCormick Barstow argued Alston failed to demonstrate why the litigation privilege did not apply to his claims and contrary to Alston's assertion, the subpoena covered Alston's mental health records. McCormick Barstow provided a copy of a subpoena dated July 19, 2019, with Baxter's declaration. McCormick Barstow further argued it did nothing illegal and Alston's claims were not exempt from the litigation privilege.

On March 3, 2021, Alston filed an objection to McCormick Barstow's evidence submitted with the reply and asserted McCormick Barstow committed perjury and fraud because the subpoena was not related to this case and the "true and correct subpoena" does not ask for mental health records or social security numbers. Alston submitted what he asserted was the true and correct subpoena with his declaration. The deposition subpoena dated June 28, 2019, requests medical records from Correctional Health Services[3] and shows that Alston was served with a notice to consumer advising him

---

**3**      The deposition subpoena requests the following records: "MEDICAL RECORDS – Complete medical records from the first date of treatment to the present, including but

5.

Candalla was seeking records from Correctional Health Services, as specified in the subpoena, and explaining what he must do if he objected to the production of the records. The register of actions shows that McCormick Barstow filed a response to Alston's objection, along with Baxter's declaration, on March 12, 2021, but those documents are not in the record.

Following oral argument on March 18, 2021, the trial court took the matter under submission and adopted its tentative ruling granting the motion and striking the complaint as its order. The trial court first found there was no need to sustain Alston's objection; while McCormick Barstow submitted the wrong subpoena with its reply, there was no fraud on the court and Alston clarified the record by submitting the correct subpoena, which he should have submitted with his opposition. The trial court found the complaint arose from constitutionally protected speech, namely, litigation activity, and Alston could not show a probability of success on his claims because they are barred by the litigation privilege.

## DISCUSSION

### I.      *Anti-SLAPP Motions and the Standard of Review*

Section 425.16 provides an expedited procedure for dismissing lawsuits filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. (§ 425.16, subd. (a).) Subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the

---

not limited to any records/documents that may be stored digitally and/or electronically: documents, correspondence, correspondence from the patient or patient's attorney, intake forms, medical reports, doctor's entries, nurse's notes, medication administration records, office notes, progress reports, cardiology reports, radiology reports, x-ray reports, MRI reports, CT reports, myelogram reports, lab reports, pathology reports, monitor strips, physical therapy records, occupational therapy records, case history, emergency records, outpatient records, diagnosis and prognosis documentation, admit and discharge records, notation(s) on any file folder, All emails between physicians and the patient regarding physical complaints, symptoms, and treatment, including secure messages."

person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

This provision has been interpreted as creating a "two-step inquiry" for resolving anti-SLAPP motions. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317 (*Flatley*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Consequently, a plaintiff can defeat an anti-SLAPP motion (1) by showing the defendant did not establish a claim arose from protected activity or (2) by demonstrating a probability of success on the merits of the claims. Under the second step, the plaintiff must demonstrate the pleading is legally sufficient and the claim alleged is supported by sufficient evidence to make a prima facie showing of facts that would sustain a favorable judgment. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) An appellate court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) Neither trial nor appellate courts weigh credibility or compare the weight of the evidence. (*Soukup*, at p. 269, fn. 3.) "Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

## II. *Protected Activity*

We first consider whether Alston's claims arise from an act in furtherance of McCormick Barstow's right of free speech or right of petition under one of the circumstances set forth in section 425.16, subdivision (e). (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 209 (*Finton*).) "In doing so, '[w]e examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies….' " (*Ibid.*) This requires " 'identifying "[t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim," ' " keeping in mind " 'the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Id.* at pp. 209–210.)

Section 425.16, subdivision (e) expressly defines an " 'act in furtherance of a person's right of petition' " to include "any written or oral statement or writing made before a … judicial proceeding, or any other official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by a … judicial body." (§ 425.16, subd. (e)(1) & (2).) A cause of action that arises from a defendant's litigation activity may be the subject of a section 425.16 motion to strike. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056.) " 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action[,]" including "qualifying acts committed by attorneys in representing clients in litigation." (*Ibid.*; see *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["[t]he anti-SLAPP statutes protect not only the litigants, but also their attorneys' litigation-related statements"].)

Cases construing the anti-SLAPP statute hold that "a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266; accord, *Briggs v. Eden*

*Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 779; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 803–804.)

In fact, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908 (*Kashian*); see *Finton*, *supra*, 238 Cal.App.4th at p. 210 [" 'all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute' "]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 ["anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with … litigation"].)

Here, Alston's claims are all based on McCormick Barstow's transmission of his medical records to the expert McCormick Barstow retained to prepare a declaration in support of their client's opposition to Alston's summary judgment motion. This is clearly a litigation-related activity which qualifies as protected activity under section 425.16. (See, e.g., *Finton*, *supra*, 238 Cal.App.4th at pp. 207–208, 210 [lawsuit's claims arose from protected activity where defendant law firm was sued for receiving and retaining an allegedly stolen hard drive since the law firm was counsel in the underlying matter and the hard drive constituted potential evidence in that matter].)

Alston does not directly argue McCormick Barstow's conduct was not protected activity under the anti-SLAPP statute. Instead, he argues his mental health records and social security number were inadvertently disclosed because they were not specifically requested in the subpoena; therefore, McCormick Barstow was obligated to refrain from examining the materials and immediately notify the sender as required under *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644. Alston further argues the subpoena

was ineffective because an affidavit was not attached to it explaining the need for the records, which he asserts was required by section 1985.

Alston raises the argument concerning the effectiveness of the subpoena for the first time on appeal. His failure to raise the argument in the trial court forfeits the claim on appeal. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [" ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court' " ' "]; *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [reviewing court will " 'ignore arguments, authority, and facts not presented and litigated in the trial court' "].)

Even if not forfeited, the claim fails. Section 2020.410, subdivision (c), which is part of the Civil Discovery Act (§ 2016.010 et seq.), sets forth the requirements for a deposition subpoena that commands only the production of business records for copying. That section requires the deposition subpoena to "designate the business records to be produced either by specifically describing each individual item or by reasonably particularizing each category of item," but specifically provides that it "need not be accompanied by an affidavit or declaration showing good cause for the production of the business records designated in it." (§ 2020.410, subds. (a) & (c).)

Here, the deposition subpoena McCormick Barstow served on Correctional Health Services was governed by the requirements of section 2020.410, as it compelled production of material at a deposition, as distinguished from attendance and production at trial. The deposition subpoena reasonably particularized the categories of Alston's medical records they were seeking, as we set forth *ante* in footnote three, but because it commanded only the production of business records for copying, an affidavit or declaration was not required. (§ 2020.410, subd. (c).)

Alston relies on *McClatchy Newspapers v. Superior Court* (1945) 26 Cal.2d 386, 396, for the proposition that an affidavit was required. While section 1985,

10.

subdivision (b), states that an affidavit must be served with a subpoena duces tecum issued before trial that sets forth good cause for production of the matters described in the subpoena, the Civil Discovery Act controls over that section. (See, e.g., *Terry v. SLICO* (2009) 175 Cal.App.4th 352, 355, 356–359 [§ 2020.510, subd. (b)'s provision that a deposition subpoena that commands the testimony of the deponent need not be accompanied by an affidavit or declaration showing good cause for production of the documents controls over § 1987.5's affidavit requirement].) Since section 2020.410 controls, an affidavit was not required.

As for Alston's claim that his mental health records and social security number were inadvertently disclosed, we agree with the trial court that the subpoena was broad enough to encompass them, as the subpoena requested all of Alston's medical records, and social security numbers are commonly found in medical records. Thus, from McCormick Barstow's perspective, the records they received were exactly what they asked for and there is nothing to indicate they thought Correctional Health Services inadvertently released Alston's mental health records or social security number.

For this reason, Alston's reliance on *State Comp. Ins. Fund v. WPS, Inc.* is misplaced. There, the court held an attorney could comply with ethical standards, and not be disqualified, if upon receipt of confidential and privileged documents apparently sent inadvertently the attorney refrains from examining the documents beyond ascertaining their privileged nature, and immediately notifies the sender the attorney possesses material which appears to be privileged. (*State Comp. Ins. Fund v. WPS, Inc.*, *supra*, 70 Cal.App.4th at pp. 656–657.) Since there was not an inadvertent disclosure, the *State Comp. Ins. Fund* rule does not apply.[4] The case also is inapplicable because it does not address section 425.16 or the litigation privilege.

---

[4] While Alston also cites *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, that case applies the rule from *State Comp. Ins. Fund*, and therefore also is inapplicable here.

11.

In sum, Alston's claims clearly arise from an act in furtherance of McCormick Barstow's right of free speech or right of petition under section 425.16, subdivision (e).

### III.    *Probability of Prevailing*

"In the second step of the anti-SLAPP analysis, 'the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.' (*Baral*[*v. Schnitt*], *supra*, 1 Cal.5th at p. 396.)  The plaintiff must demonstrate this probability of success with admissible evidence." (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 768.)  The plaintiff cannot rely on the allegations of the complaint, even if verified, but must produce evidence that would be admissible at trial.  (*HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th at p. 212.)

McCormick Barstow contends Alston cannot prevail on his claims because they rely entirely on acts which are absolutely privileged because they occurred "[i]n any … judicial proceeding." (Civ. Code, § 47, subd. (b)(2).)  We agree.

Civil Code section 47, subdivision (b)(2) creates an absolute litigation privilege, barring all tort claims other than for malicious prosecution based on statements or other communications made in a judicial proceeding.  (*Flatley*, *supra*, 39 Cal.4th at p. 322.)  "The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 (*Silberg*).)  The privilege also "promotes the effectiveness of judicial

12.

proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.)

"Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg*, *supra*, 50 Cal.3d at p. 214.) "To further these purposes, the privilege has been broadly applied." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

The "privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg*, *supra*, 50 Cal.3d at p. 212; see *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [litigation privilege bars cause of action "provided that there is some reasonable connection between the act claimed to be privileged and the legitimate objects of the lawsuit in which that act took place"].) The privilege is absolute and "it applies, if at all, regardless whether the communication was made with malice or the intent to harm. [Citation.] … [¶] If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law. [Citation.] Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian*, *supra*, 98 Cal.App.4th at p. 913; see *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965 ["[b]ecause Civil Code section 47, subdivision (b) protects any statements or writings that have ' "some relation" ' to a lawsuit, communications made both during and in anticipation of litigation are covered by the statute"].)

Moreover, " 'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to

13.

litigation." (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 921; accord, *Kashian*, *supra*, 98 Cal.App.4th at p. 920; see *Jacob B. v. County of Shasta*, *supra*, 40 Cal.4th at p. 956 ["the privilege extends even to civil actions based on perjury"]; *Flatley*, *supra*, 39 Cal.4th at p. 322 ["[t]he litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony' "]; *Finton*, *supra*, 238 Cal.App.4th at pp. 212–213 [litigation privilege applied to defendant law firm's actions in receiving and retaining an alleged stolen hard drive during a lawsuit until it was turned over pursuant to the court's order in the underlying case]; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 416 [rejecting tenant's argument the litigation privilege did not apply because tenant was suing landlord's lawyer for conspiracy and aiding and abetting his clients' illegal entries into the apartment]; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 20, 24–26 [litigation privilege applied to attorney's misrepresentation of available insurance policy limits to induce the settlement of a lawsuit].)[5]

" 'A plaintiff cannot establish a probability of prevailing [in responding to an anti-SLAPP motion] if the litigation privilege precludes the defendant's liability on the claim.' " (*Bergstein v. Stroock & Stroock & Lavan LLP*, *supra*, 236 Cal.App.4th at p. 814; see *Flatley*, *supra*, 39 Cal.4th at p. 323 [litigation privilege may present a substantive defense the plaintiff must overcome to demonstrate a probability of prevailing].)

Alston's claims against McCormick Barstow are based on its communicative conduct in a judicial proceeding to achieve the objects of the litigation. Disseminating

---

[5]     As our Supreme Court has recognized, where an attorney's privileged communication rises to the level of criminal conduct, "other remedies aside from a derivative suit for compensation will exist," including "criminal prosecution under Business and Professions Code, section 6128[,] and State Bar disciplinary proceedings for violation of Business and Professions Code, section 6068, subdivision (d)." (*Silberg*, *supra*, 50 Cal.3d at pp. 218–219, fn. omitted.)

14.

information for litigation purposes qualifies as communicative conduct subject to the litigation privilege. (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 174–175, 187 [attorney's sharing of documents containing confidential company information to co-counsel and other counsel in a related arbitration protected by the litigation privilege because the documents were reasonably relevant to pending or contemplated litigation].) McCormick Barstow's dissemination of Alston's medical records, which they obtained from Correctional Health Services pursuant to the deposition subpoena,[6] to their retained expert so she could render an expert opinion in Alston's professional negligence action is clearly protected by the litigation privilege.

As in the trial court, Alston contends the litigation privilege gives way to the more specific protections alleged in the three causes of action. The litigation privilege, however, precludes causes of action for invasion of privacy. (*Jacob B. v. County of Shasta*, *supra*, 40 Cal.4th at p. 960.) It also applies to a cause of action arising from a purported violation of Civil Code section 1798.85 et seq., which is Alston's third cause of action. (See *Banga v. Equifax* (N.D. Cal. 2015) 2015 WL 3799546 *6 [granting judgment on the pleadings on plaintiff's claim for violation of Civ. Code, § 1798.85 based exclusively on the filing of her credit reports containing her social security number].)

Alston contends the Information Practices Act "is absolute to the litigation privilege." The Information Practices Act of 1977 (Civ. Code, § 1798 et seq.) (IPA) "generally imposes limitations on the right of governmental agencies to disclose personal information about an individual." (*Jennifer M. v. Redwood Women's Health Center* (2001) 88 Cal.App.4th 81, 87.) "[T]he Information Practices Act is aimed at barring or

---

**6** While Alston alleged the medical records Correctional Health Services produced pursuant to the subpoena and which McCormick Barstow provided to Pearson contained his mental health records and social security number, Alston did not produce any admissible evidence to support these allegations.

15.

limiting the dissemination of confidential personal information—and preventing the misuses of such information—by government *agencies*." (*Id.* at p. 89.) Government agencies do not include local agencies, such as cities and counties. (Civ. Code, § 1798.3, subd. (b)(4); Gov. Code, § 6252.) Since McCormick Barstow is not a government agency or entity as defined by Civil Code section 1798.3, subdivision (b), the IPA does not apply to their disclosure of Alston's medical records to the retained expert.

Moreover, Alston does not cite any authority to support his assertion that the litigation privilege is barred by the IPA. While he cites two cases, one was ordered not to be published (see *Randall v. Scovis* (Mar. 5, 2001) D036508, opn. ordered nonpub. June 13, 2001), and therefore cannot be cited as legal authority or precedent. (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 706; Cal. Rules of Court, rule 8.1115(a).) The other case states there was an issue raised concerning whether the litigation privilege bars a claim under the IPA, but the case was only partially published, and that issue is not addressed in the published portion. (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 638.) Alston contends McCormick Barstow was required to redact his social security number before providing his medical records to the retained expert, but the statute he cites, Government Code section 6254.29, which is part of the California Public Records Act, applies only to "local agencies," which is defined as government agencies such as cities and counties. (Gov. Code, §§ 6251, 6252.) As we have stated, McCormick Barstow is not a local agency; therefore, the California Public Records Act does not apply to them.

Alston also has not shown a likelihood of prevailing on the second cause of action for violation of Welfare and Institutions Code section 5330, which is part of the Lanterman-Petris-Short Act and authorizes a civil action for knowing release of certain confidential information or records concerning the plaintiff. Confidential information and records, however, may be disclosed "[t]o the courts, as necessary to the administration of justice." (Welf. & Inst. Code, § 5328, subd. (a)(6).) The trial court

found that because the records in the underlying action were released pursuant to a subpoena, which is effectively a court order to produce records with disobedience punishable by contempt, Correctional Health Services' production of Alston's medical records and McCormick Barstow's receipt of the documents and transmission to the retained expert witness were disclosures to the courts.

While Alston objects to the trial court's finding, he does not cite any authority to show the trial court erred. Alston cites cases which state the authorization for disclosure to the courts pursuant to Welfare and Institutions Code section 5328, subdivision (a)(6), which contemplates use of the information or records in a pending judicial action or proceeding, does not override privileges such as the psychotherapist-patient privilege. (*Boling v. Superior Court* (1980) 105 Cal.App.3d 430, 443; *Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 602; *In re S.W.* (1978) 79 Cal.App.3d 719, 722 [Welf. & Inst. Code, § 5328 exception for disclosure of records in judicial proceedings "does not authorize a court to order disclosure of matter which the Evidence Code makes privileged"].) These cases, however, addressed situations where the privilege was raised in response to discovery requests or as an objection to the admissibility of evidence. Alston apparently did not raise a privilege objection to Correctional Health Services' disclosure of his mental health records or in response to the use of the retained expert's declaration in opposition to his summary judgment motion. Having failed to object, any argument that the records were privileged has been forfeited.

Alston asserts the records were protected by the psychotherapist-patient privilege of Evidence Code section 1014, and therefore the trial court was required to determine if he waived the privilege, citing *Roberts v. Superior Court* (1973) 9 Cal.3d 330. That case, however, does not stand for the proposition that the trial court has a sua sponte duty to determine whether Alston waived the privilege. "Privileges are preserved unless the holders fail to object in a proceeding where they have standing and the opportunity to claim them." (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282,

17.

1290; Evid. Code, § 912, subd. (a).) Alston never objected to the production of the records, and therefore waived any objection based on the psychotherapist-patient privilege.

Finally, Alston complains Correctional Health Services was required to invoke Evidence Code section 1040 and turn the records over to the court before producing them to McCormick Barstow.[7] Alston, however, essentially is attacking Correctional Health Services for turning over the records. This has nothing to do with McCormick Barstow's use of the records in defending its client or whether the litigation privilege applies to Alston's claims.

In sum, Alston "failed to ' "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Finton*, *supra*, 238 Cal.App.4th at p. 214.) Therefore, the anti-SLAPP motion was properly granted.

## DISPOSITION

The March 18, 2021 order granting the motion to strike is affirmed. Respondent is awarded its costs on appeal.

DE SANTOS, J.

WE CONCUR:

POOCHIGIAN, ACTING P. J.

DETJEN, J.

---

[7]    Alston cites one case in support of this contention, *Macomber v. State Personnel Bd.* (Dec. 17, 1987, C000604) [opn. ordered nonpub. Mar. 17, 1988], but it was ordered not to be published and therefore cannot be cited or relied upon.

18.